*660 OPINION.
Disney:
Petitioners on their income tax returns for 1935 included in income 30 percent of net gains reported from sales of real estate in the Repetto Ranch subdivision. Respondent held that the income was from sales of property held primarily for sale to customers in the ordinary course of the trade or business of petitioners and therefore included in their taxable-income the entire amount, under section 117 (b), Revenue Act of 1934.[1]
*661 Our question is, Was the property disposed of during 1935 from Repetto, and from which income was realized, “property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business” under the above statute? We have our attention directed to various cases upon the subject. However, we think that those really contributing in any essential way to the solution of .our problem, or greatly similar in fact, are limited to Phipps v. Commissioner, 54 Fed. (2d) 469; Pope v. Commissioner, 77 Fed. (2d) 599; Richards v. Commissioner, 81 Fed. (2d) 369; Welch v. Solomon, 99 Fed. (2d) 41; and Commissioner v. Boeing, 106 Fed. (2d) 305. Other citations reflect light upon the question only indirectly. After reviewing the above cases and others less helpful, we come to the conclusion that the lands involved must be considered within the above quoted language of the statute.
We are unable to distinguish this case in principle and in determinative fact from the Richards, Solomon, and Boeing cases above. Phipps v. Commissioner rests upon the conclusion that the transactions in the taxable year were not sufficient to constitute doing business, and Pope v. Commissioner merely decides that the officers and chief stockholders of a corporation were not engaged, merely because of that relation, in the business conducted by the corporation, the court assuming the corporation to be in business and passing only upon the position of its principal officers and stockholders. That is, of course, not the present case.
It seems to us that the question here is controlled particularly by the Richards and Boeing cases. The latter was invoked by petitioners as decided by the Board, but has since been reversed. The petitioners here urge that the land herein involved was originally acquired and held for investment. We agree. But the same is true in both of the cases last above named. In the Boeing case, as herein, much of the land had been inherited years ago and held for investment. It is likewise true, we think and we have found, that the petitioners were not in the real estate business, aside from the activities in connection with Repetto Ranch; but neither was Richards, and Boeing was a retired airplane manufacturer. Both simply devoted lands previously held for investment, or for another purpose, to a business purpose, in a manner remarkably parallel to that involved here.
Petitioners urge the stress of necessity which forced the petitioners to carry on the subdivision started by Ransom. Yet the stress seems no greater than it was in the case of Richards, supra, whose property had become so valuable as to be unprofitably devoted to intensive truck farming and packing and had become encumbered by assessments for public improvements. This is essentially the situation facing the petitioners. The only way a profit satisfactory to them could *662 be obtained was by carrying on a subdivision business. It is obvious, we think, that Richards and the petitioners might have sold the property, as a whole, without going into business with it. The price desired might not have been secured in that way, it is true, but that only accentuates the idea that they went into a business to obtain a better price than was obtainable by selling the property as investment property as a whole, or at least without going into the real estate business.
Keller testified in effect that petitioners did better than most sub-dividers “in that bracket” as to landscaping and improving. The subdivision obviously therefore was comparatively attractive, yet he also testified that he made no particular effort to sell the whole or any part of the’ property as acreage, though there were offers to buy the Repetto Ranch. Asked whether after 1934 the petitioners ever instructed him to sell any property as acreage, he could recall only three cases of about 3 acres, 5 acres and II% acres, respectively, with only the last positively after 1934. He also said that he did not solicit offers of purchase of any of the property as acreage, though he had been approached, that some sales pending at the time of hearing came unsolicited, that there were subdivisions adjacent to the Repetto Ranch, which continued through 1934 and 1935 and still continue, but that the persons conducting such real estate subdivisions were not approached for the purpose of acquiring the Repetto property, that on the contrary approach came from the other side. “We have a good subdivision; people come to us wishing to buy.” From all of this we must conclude that it was not impossible for this property to be sold as acreage or investment property, not unreasonable to think it could have been so sold for some price not wholly unfair, in spite of Keller’s further statement to the effect that there was no way of disposing of the property other than carrying on with the subdivision unless it was given away. This he modified by saying that subdividing was the “only practical manner in which it could be sold.”
It thus appears that the property was desirable to others in its subdivided state, that no particular effort was made to sell it as acreage, that approaches were made, that a “practical way” in the mind of Keller included and meant a way not disadvantageous, and that therefore the reason for carrying on the subdivision was a desire for a greater price than could have been obtained by sale as acreage.
Assuming that necessity could under any circumstances decide this question, one relying upon necessity as forcing him to go into business in order to liquidate an investment must logically demonstrate that he could not sell at all, or at least not for any substantial amount, without going into business. Here we think the contrary has been indicated. The amount of the liens for improvements, assessments, *663 etc., does not appear large in comparison with, the price set upon the property. On May 16, 1932, upon the final agreement with Hansom, the purchase price set was $1,299,978.25. The liability for public improvements under the Improvement Bond Act of 1911, the Mattoon Act, and under drainage was only $256,000 and from August 1, 1933, to December 31, 1935, approximately $70,000 was spent on improvements, except houses erected. Even if a sharp decrease in value of the property is considered, as we do because lots decreased about half in value, yet it still appears that the property was not encumbered for its full fair value. Certainly no contrary showing has been made. We are not convinced that sale as acreage, as investment property, without going into business with it, would have been disastrous, but rather, on the contrary, that it could have been so sold in some reasonable transaction. A better financial result, and not necessity, thus appears as the reason for carrying on with the subdivision.
But however that may be, Commissioner v. Boeing, supra, refused, and we think properly, to apply the test of liquidation of investment property, saying: “This court has heretofore, in the case of Richards v. Commissioner, supra, rejected the liquidation test in determining the question here involved.” This was in spite of the fact that the Board had found as a fact that the taxpayer-seller’s motive in selling was to liquidate his investment. Such cases as Girard Trust Co., Trustee, 34 B. T. A. 1066, determining the question of a trust as against an association taxable as a corporation, are not controlling upon this question. We therefore conclude that the desire to liquidate an original investment, even under some necessity to secure a profitable return, as in the Richards and Boeing cases and here, does not alter the fact of business actually entered into. It is business none the less. These cases dispose also of the petitioners’ contentions they were not personally selling the property. Engagement in business through an agency is equally as effective as personal participation. Welch v. Solomon, supra. The Richards case involved a selling agency in much the same manner as here, and contracts of employment by Boeing were held sufficient to put him in business without personal participation. The numerous authorities need not be cited in order to hold that the business need not be petitioner’s only or principal business. There is no place, under the facts here, for any contention that the sales made were “isolated” or “casual.” Beyond argument, we think they show the continuity and frequency characteristic of business transacted. That they were made to customers and in the ordinary course is equally obvious.
We do not overlook the fact that in Richards v. Commissioner, supra, the taxpayer conceded that he held the subdivided property previously for sale. No such concession appears in the Boeing case, *664 nor in Welch v. Solomon, supra, cited and relied upon therein, and Richards’ concession did not detract from his further contention as to “sale to customers in the ordinary course of his trade or business”, which is, of course, the pivotal question. Petitioners affirm, rather than deny, that the property was held primarily for sale. In effect, it had always been for sale, but not in a subdivision. Keller said: “My understanding was that I was to offer most anything that was in southern California and refer it to the executors.” Sidney M. Ehrman said: “They wanted to sell the land and realize on it” and “They wanted to make an outright sale either for cash or for a substantial cash payment”, but they were opposed to subdivision schemes. It thus appears that the case in this respect is in no different position from that conceded in the Richards case.
We are unable to distinguish the situation here from that in the Richards and Boeing cases. The petitioners prior to reversal strongly relied upon the latter as parallel. We conclude on their authority that the property was held by petitioners primarily for sale to customers in the ordinary course of their trade or business and that gains therefrom are ordinary and not capital gains. See also Welch v. Solomon, supra.

Decision will be entered under Rule 50.

 SEC. 117. CAPITAL GAINS AND LOSSES.
(a) Generad Rule. — In the case of a taxpayer, other than a corporation, only the following percentages of the gain or loss recognized npon the sale or exchange of a capital asset shall be taken into account in computing net income:
* fit * * * * *
30 per centum if the capital asset has been held for more than 10 years.
(b) Definition of Capital Assets. — For the purposes of this title, “capital assets" means property held by the taxpayer (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business.